IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DARYL ANDRUS,                )
                             )
        Petitioner,        )
  v.                         )   Civil Action No. 12-519-GMS
                             )
DAVID PIERCE, Warden, and    )
ATTORNEY GENERAL OF THE      )
STATE OF DELAWARE,           )
                             )
        Respondents.[1]     )

---

Daryl Andrus. *Pro se* petitioner.

Elizabeth R. McFarlan, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

---

**MEMORANDUM OPINION**

July 22, 2015
Wilmington, Delaware

---

[1] Warden David Pierce replaced former Warden Perry Phelps, an original party to this case. *See* Fed. R. Civ. P. 25(d).

Sleet, District Judge

Pending before the court is an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("petition") filed by petitioner Daryl Andrus ("Andrus"). (D.I. 1) The State has filed an answer in opposition. (D.I. 13) For the following reasons, the court will deny the petition as time-barred by the one-year limitations period prescribed in 28 U.S.C. § 2244.

## I. BACKGROUND

The facts leading to Andrus' arrest and conviction are set forth below, as summarized by the Delaware Supreme Court in *Andrus v. State*, 719 A.2d 947 (Table), 1998 WL 736338 (Del. Oct. 1, 1998):

> On April 4, 1995, there was a party at 407 7th Street, Holloway Terrace, the residence of Daryl "Babe" Andrus. John "Dwayne" Cathell brought over a case of beer around noon and sat on the porch drinking with Andrus and two other men. Fogg arrived around 2:30 p.m. with a 12-pack of beer and Cheryl Adams. James "JD" Dilley was there also. Dilley and Andrus had been friends for years, although two weeks earlier Andrus had severely beaten Dilley on the face. Dilley was a small man, weighing about 150 pounds and five feet three inches tall. He had a clawed right hand.
>
> The party migrated from the front porch to the back where Fogg provoked Cathell into fighting by kicking Cathell's leg and knocking his hat off. Subsequently, the party moved down to the basement where Cathell and Fogg fought again. Dilley got between the two men, but Andrus hit Dilley out of the way and broke up the fight.
>
> Around 8:00 p.m., Andrus, Fogg and Adams went to a tavern. They stayed there for about an hour and a half. According to Adams, Fogg and Andrus were rowdy and excited from the drinking and earlier fighting.
>
> On their way back to Andrus's residence, they stopped at a liquor store. They arrived at Holloway Terrace at approximately 10:00 or 10:30 p.m. Dilley was there. When Adams left approximately 20 minutes later, only three people remained in the dwelling: Dilley, who was in the living room trying to get a fire started in a wood stove, and Andrus and Fogg, who were in the kitchen pouring glasses of black sambucca.
>
> The next morning at approximately 7:30 a.m. an ambulance from the local fire company responded to 407 7th Street. 'When they arrived on the scene, Fogg

directed them inside where they found a body wearing boxer shorts and socks. There was blood all over the walls and carpets of the house. Fogg started mouthtomouth resuscitation while the emergency medical technicians began CPR compressions. Fogg told them, "I don't understand what happened, we were talking to him this morning."

Andrus was arrested on April 6, 1995, and was subsequently indicted along with his co-defendant, Jeffrey Fogg, on one count of first degree intentional murder and one count of first degree conspiracy. (D.I. 13 at 1) In April 1996, a Delaware Superior Court jury convicted Andrus and Fogg on both counts. Two days later, Andrus moved to set aside the verdict. The Superior Court denied the motion after hearing oral argument. In July 1996, the Superior Court sentenced Andrus to a mandatory life sentence for the murder conviction and to five years of incarceration, suspended after four years for probation, for the conspiracy conviction. *Id.* Andrus appealed, and the Delaware Supreme Court remanded the case for reconsideration of Fogg's pre-trial motion to sever in light of a possible *Bruton* violation. Once returned from remand, the Delaware Supreme Court affirmed Andrus' convictions on October 1, 1998. *See Andrus*, 1998 WL 736338.

Andrus filed his first motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") on September 27, 2001, which alleged, *inter alia*, a claim that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963) by not divulging the existence of a secret agreement it had with trial witness Robert Richmond. *See State v. Andrus*, 2010 WL 2878872, at *1 (Del. Super. Ct. July 22, 2010). A hearing for the *Brady* claim was scheduled for January 2002, but was postponed indefinitely because Richmond was incarcerated in Georgia and unavailable to testify. *Id.* The Superior Court held a hearing on the other claims and denied the Rule 61 motion on March 12, 2003; the Superior Court did not address the

2

*Brady*/Richmond secret agreement claim in its decision. *See State v. Andrus*, 2003 WL 1387115 (Del. Super. Ct. Mar. 12, 2003). The Delaware Supreme Court affirmed the Superior Court's judgment on March 12, 2004. *See Andrus v. State*, 844 A.2d 991 (Table), 2004 WL 691922 (Del. Mar. 12, 2004).

Andrus filed a second Rule 61 motion on May 2, 2007, once again alleging the *Brady*/Richmond secret agreement claim. *See State v. Andrus*, 2008 WL 1952161 (Del. Super. Ct. Apr. 15, 2008). The Delaware Superior Court denied the second Rule 61 motion on April 15, 2008 without addressing the *Brady* claim, explaining that the "situation at the time of Andrus' first motion," where "the whereabouts of Richmond were unknown or it was impossible to extradite Richmond to Delaware," "remains the situation now." *Id.* at *1. In 2009, Delaware obtained custody of Richmond and the Superior Court held a hearing to take Richmond's testimony regarding Andrus' *Brady*/Richmond secret agreement claim. Andrus was represented by his original post-conviction counsel in the renewed evidentiary hearing. After the completion of the hearing, the Superior Court denied the *Brady*/Richmond secret agreement claim. *See Andrus*, 2010 WL 2878872. On January 13, 2011, the Delaware Supreme Court affirmed that decision on post-conviction appeal. *See Andrus v. State*, 2011 WL 135780 (Del. Jan. 13, 2011).

Andrus filed the instant habeas petition in April 2012, alleging the following three grounds for relief: (1) both trial counsel and post-conviction counsel provided ineffective assistance; (2) the State violated *Brady* by entering into and not disclosing a secret deal with witness Robert Richmond for his favorable testimony at Andrus' trial; and (3) Andrus was denied a right to professional medical attention. The State filed an answer in opposition, alleging that the petition should be denied as time-barred or, alternatively, that the court should deny

3

claims one and two as procedurally barred and claim three for not asserting a claim cognizable on federal habeas review.[2] (D.I. 13)

## II. ONE YEAR STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was signed into law by the President on April 23, 1996, and habeas petitions filed in federal courts after this date must comply with the AEDPA's requirements. *See generally Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Andrus' petition, filed in 2012, is subject to the one-year limitations period contained in § 2244(d)(1). *See Lindh*, 521 U.S. at 336. Andrus does not allege, and the court does not discern, any facts triggering the application of § 2244(d)(1)(B), (C), or (D). Thus, the one-year period of limitations in this case began to run when Andrus' conviction became final under

---

[2]The court concurs with the State's contention that claim three asserts a prison conditions claim that does not present an issue cognizable on federal habeas review. Rather, this claim would be more properly pursued under 42 U.S.C. § 1983.

4

§ 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), if a state prisoner appeals a state court judgment but does not seek certiorari review, the judgment of conviction becomes final upon expiration of the ninety-day time period allowed for seeking certiorari review. *See Kapral v. United States,* 166 F.3d 565, 575, 578 (3d Cir. 1999); *Jones v. Morton,* 195 F.3d 153, 158 (3d Cir. 1999). In this case, the Delaware Supreme Court affirmed Andrus' conviction and sentence on October 1, 1998, and Andrus did not file a petition for a writ of certiorari in the United States Supreme Court. Consequently, Andrus' conviction became final for the purposes of § 2244(d)(1) on December 31, 1998. Accordingly, to comply with the one-year limitations period, Andrus had to file his § 2254 petition by December 31, 1999. *See Wilson v. Beard,* 426 F.3d 653 (3d Cir. 2005)(holding that former Federal Rule of Civil Procedure 6(a), (e) applies to federal habeas petitions).

Andrus did not file the instant habeas petition until April 25, 2012,[3] more than twelve years after the expiration of AEDPA's statute of limitations. Thus, the petition is time-barred, unless the limitations period can be statutorily or equitably tolled. *See Holland v. Florida,* 560 U.S. 631, 645 (2010)(equitable tolling); 28 U.S.C. § 2244(d)(2)(statutory tolling). The court will discuss each doctrine in turn.

### A. Statutory Tolling

Pursuant to § 2244(d)(2), a properly filed application for state collateral review tolls AEDPA's limitations period during the time the application is pending in the state courts, including any post-conviction appeals, provided that the application is filed during AEDPA's one-year limitations period. *Swartz v. Meyers,* 204 F.3d 417, 424-25 (3d Cir. 2000).

---

[3] Andrus' mother personally filed the petition in the Clerk's office on April 25, 2012.

Here, Andrus filed his first Rule 61 motion on September 27, 2001, approximately one and one-half years after the limitations period had already expired. Thus, Andrus' first and second Rule 61 motions have no statutory tolling effect. Accordingly, the instant petition must be dismissed as time-barred, unless equitable tolling applies.

## B. Equitable Tolling

The one-year limitations period may be tolled for equitable reasons in rare circumstances when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, **and** (2) some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 130 S.Ct. at 2562 (emphasis added). Equitable tolling is not available where the late filing is due to the petitioner's excusable neglect. *Id.*; *Miller v. New Jersey State Dept. of Corr.*, 145 F.3d 616, 618-19 (3d Cir. 1998). Consistent with these principles, the Third Circuit has explained that equitable tolling of AEDPA's limitations period may be appropriate in the following circumstances:

> (1) where the defendant (or the court) actively misled the plaintiff;
> (2) where the plaintiff was in some extraordinary way prevented from asserting his rights; or
> (3) where the plaintiff timely asserted his rights mistakenly in the wrong forum.

*Jones*, 195 F.3d at 159; *Thomas v. Snyder*, 2001 WL 1555239, at *3-4 (D. Del. Nov. 28, 2001).

Andrus contends that the petition is timely because the *Brady*/Richmond secret agreement claim was preserved on March 12, 2003, the date on which the Superior Court denied his first Rule 61 motion. The court construes this contention as alleging that AEPA's limitations period should be equitably tolled for the entire period his *Brady*/Richmond secret agreement claim was deferred from consideration, namely, either from September 27, 2001 (the date on which Andrus filed his first Rule 61 motion) or March 12, 2003 (the date on which the Superior

6

Court denied the first Rule 61 motion) until the Delaware Supreme Court issued its decision on January 13, 2011 affirming the Superior Court's denial of this specific claim after that state court finally obtained Richmond's testimony with respect to the claim. This argument is unavailing for several reasons. First, as previously explained, Andrus did not file his first Rule 61 motion until September 27, 2001, well after AEDPA's limitations period had already expired. As such, the court cannot toll a limitations period that had already expired long before March 12, 2003 (the date of the first Rule 61 motion denial). Second, the fact that the Superior Court did not procure Richmond's testimony while Andrus' first Rule 61 motion was pending does not constitute an extraordinary circumstance that prevented Andrus from timely filing his federal habeas petition in the first place. Even if Andrus believed he needed to exhaust state remedies by filing a Rule 61 motion before filing a federal habeas petition, Andrus' "preservation" argument fails to demonstrate that some extraordinary circumstance prevented him from starting that exhaustion within AEDPA's one-year limitations period. For both of these reasons, the court concludes that equitable tolling is not available on the ground set forth by Andrus.

Finally, the court notes that the petition would still be time-barred even if the court were to equitably toll the limitations period from the time Andrus' judgment of conviction became final (December 31, 1998) until the Delaware Supreme Court issued its final decision regarding Andrus' second Rule 61 motion. The Delaware Supreme Court affirmed the Superior Court's denial of Andrus second Rule 61 motion on January 13, 2011. Applying AEDPA's one-year limitations period to that date would mean that Andrus had to file his petition by January 13, 2012. The instant petition, however, was not filed until April 25, 2012, which was still three months too late.

Accordingly, the court will dismiss the petition as time-barred.

7

## III. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In addition, when a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

The court has concluded that Andrus' petition filed pursuant to 28 U.S.C. § 2254 should be denied as time-barred. The court is persuaded that reasonable jurists would not find these conclusions to be debatable. Therefore, the court will not issue a certificate of appealability.

## IV. CONCLUSION

For the reasons discussed, the court will deny Andrus' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

An appropriate order will be entered.

8